McGinnis, J.
The case of Lenhart v. The Board of Education of Newton Township et al is an action to enjoin the board and its co-defendant, Ginn & Co., from placing in use in the schools of Newton township certain books of Ginn & Co., instead of certain books claimed to have been adopted, that were published by the American Book Company.
In the petition, the plaintiff alleges that he is a tax-payer and a citizen of Newton township, and that, on May 7, 1906, the books of the American Book Company were legally adopted and contracted for; that on September 3, 1906, said board by its action, which the plaintiff claims to have been irregular, adopted some books of the defendant, Ginn & Co., instead of some of the boobs theretofore alleged to have been adopted of the American Book Company. The petition also alleges that this latter adoption, i. e., the adoption of the books of Ginn & Co., was illegal *130 and void; that the attempted change of books would cause expense to the patrons of the schools and a wrongful expenditure of public money; that it would cause irreparable injury, for which there is no adequate remedy at law; and prays for an injunction against the defendants to prevent the board and the said Ginn & Co. from making this exchange of books.
The board of education does not file any answer, but the defendant, Ginn & Co., denies that the books of the American Book Company were legally adopted, and denies that the books of Ginn & Cq. were illegally adopted, and it alleges that the books adopted in May, 1906, if legally adopted at all, were simply adopted as a substitute for books theretofore adopted by the board in 1901, and that the other books were adopted September 3, 1906, within two weeks after the third Monday of August, by a majority vote of the board. As a second defense, Ginn & Go. say that on August 6, 1906, said books were adopted at a regular meeting of said board, by a three-fourths majority of said board.
Plaintiff replies to the second defense and denies that said meeting of August 6, 1906, was a regular meeting, alleging that it was a special meeting.
The issues made by these pleadings have been submitted on the evidence and the arguments of counsel.
The record of the board shows that at a meeting of the board held July 22, 1905, the schools were ordered to begin on the second Monday of September, where the buildings were completed, and nothing is said about when they were to begin where the buildings were not completed. The evidence outside of the record evidence shows that, the terms were eight months for each school, and that each and all of these terms expired on the twenty-seventh day of April, except one; and that one expired May 16, 1906, I believe was the testimony of the witness.
At a meeting on the 6th of January, 1906, the board fixed the time for its regular meetings, as it is required to do by law, and these meetings were to be on the first Monday in each month while the schools were in session, and after the schools were closed, then each alternate month. All of the school terms but one expired in April, and that one expired the sixteenth of *131 May — -twenty-seventh of April and the sixteenth of May. Between those two dates, on the seventh day of May, the first Monday, the board of education held a meeting; and the first question presenting itself in the case, probably is, was that a regular meeting of the board?
Just how broad we may consider the language of the board’s resolution as to when its regular meetings should be held, “the first Monday in each month while the schools were in session,” is a question. It is true that on the seventh day of May, 1906, all of the schools were not in session. Is there anything in that resolution that would warrant us in saying that the resolution did not apply and was not in force, so long as any school of the township was in session?
When we come to look at the minutes of the meetings of May 7, 1906, they say, “The board of education in Newton township met in regular meeting in election house in White cottage.” If the record is'to be taken as showing what they themselves thought about it, they called it a regular meeting; and if the schools were in session, or any of them, within the meaning of their resolution, it should be called a regular meeting.
I find then that that meeting of May 7, 1906, was a regular meeting. I find that as one of the facts in the case.
Before any other regular meeting was had, the last school term expired, and the question that next presents itself is, what would be the next regular meeting? They were to be alternate months. The resolution of the board does not say whether the succeeding month after the expiration of the school terms should be the one for the first regular meeting or whether that month should be missed and the next month be the one for. such regular meeting. But if we take it in its ordinary sense, and call the meeting of May 7 a regular meeting, the next regular meeting would be the first Monday in July. It seems from the record, however, that no meeting was held on the first Monday in July. The first meeting held in July was on the ninth day of the month, and that could not very well have been the first Monday. Then, missing the month of August, the next regular meeting would come the first Monday in September, which, I take it, was the third day of September. Ac *132 cording to this plan of calculation, starting as a basis with the seventh of May as a regular meeting, the meeting of September 3 would be a regular meeting.
At that meeting, it is alleged that the books of Ginn & Co. were adopted, but the record shows that they were not adopted by a vote of three-fourths of the board. While the meeting was regular, the vote was not such as is required by law, only three out of the five voting for the adoption of those books, which could not have been legally adopted at that meeting according to the showing of this record.
The record shows (if we are permitted to go into it outside of certain specified items) that on June 11 the board held a called meeting and adjourned to July 9, and then adjourned to August 6. At that last meeting, it is alleged in the second defense of Ginn & Co., three-fourths of the board voted to adopt the -books of Ginn & Co., i. e., the books that are named in the petition as belonging to that company. But while the vote at that meeting was three-fourths, as required by law, that meeting was not and could not have been a regular meeting, because it was a second adjourned meeting from a called meeting. We could not, I think, with any propriety call the meeting of August 6 a regular meeting.
■ I think that the evidence shows that the books of Ginn & Co. were not adopted according to law, and that any attempt to place them in the schools of Newton township would be unlawful, under the authority of either of those meetings of August 6 or September 3.
I think the evidence shows that the books of the American Book Company were adopted at a regular meeting by a legal vote and that they were not adopted, as has been claimed in argument, as substitutes for books adopted in 1901, but for the full period of five years. The theory of adopting them for the unexpired portion of five years would in this case work an absurdity, and it would work an absurdity in a great many instances; for these substitutions (if they were substitutions) were made on the seventh day of May, and in the month of June the five years expired for the books that were adopted in 1901. There would be then, books adopted in May to expire in *133 June. I think that that construction of the law would work too many absurdities to be a reasonable construction. I hold then that these books were not adopted as substitutes for the books adopted in 1901.
Some of the books of the American Book Company, it appears from the testimony, had been in use prior to this meeting of May, 1906, and those of them that were in use, that are named in the petition, were re-adopted on the sixth day of May, and were re-adopted for the full period of five years unless sooner exchanged or displaced at a regular meeting of the board by a three-fourths vote of the members.
These books that were r.e-adopted then became the books that were lawfully to be used. They were already in use in some of the schools to some extent, according to the testimony of the superintendent of the township, and must be displaced, if any .validity is to be given to the action of the board of August 6 or September. 3 of that year, which would undoubtedly cause expense to the. tax-payers and to the plaitiff in this case, if his children used them or were pursuing the studies in any of those books so to be replaced. According to my view of this matter, here is an attempt to unlawfully displace books from the schools of Newton township and to unlawfully put in their place other books, and the question is raised, what is the remedy?
The remedy asked for by the petition is that these defendants, the board of education and Ginn & Co., be perpetually enjoined from making this exchange.
It is suggested in argument that this remedy does not lie, for the reason that the plaintiff has a remedy at law that is sufficient, which remedy is by writ of mandamus to compel obedience to the law, and an authority is cited from the Northwestern Reporter supporting that theory; but the case is not an Ohio case, and it is not, as I look at it, Ohio law. Under the statutes of Ohio, Section 6744 provides that a writ of mandamus must not be issued where there is a plain and adequate remedy in the ordinary course of law. It seems that in Ohio, the right is governed by statute law, and in 51 O. S., 83, we find a case where the court refused the remedy by mandamus to plaintiffs seeking to compel a private corporation to issue its stock to *134 one who had paid for it, on the ground that there was an adequate remedy at law for damages as well as a remedy in equity to compel the issue of the stock. That being. the view taken of the Ohio statute by the Ohio court, I do not think I would be justified in following the case cited by counsel from the Nortkwestern Eeporter.
The 35 O. S., 368, might be cited as being some authority for the claim that mandamus 'is the proper remedy. In that ease, which arose in the schools of Columbus, it seems that the board of education received from a committee a report which, at a regular meeting, on the sixth of August, was taken up and a proposition received from a book company, which proposition contained terms and prices upon which Harper’s geographies would be furnished for the use of the schools. Thereupon the report was amended, etc., by substituting the name of Harper’s geographies for that of the Electric series, and the reports as amended was adopted by the board, and thereupon the board adjourned, no motion having been made to reconsider. On the twenty-sixth of August, the board, by a vote of six to five, assumed to reconsider its action of August 12, and six of the eleven members of the board claimed that this action left the Cornell series as the text books in the schools, and refused to permit the children of the relator (the latter being a resident tax-payer of the school district) to use Harper’s geographies in the schools.- Under that state of facts, the action being to compel the board of education to permit relator’s children to use Harper’s geographies in the ' school — Held: That the action of the board on the twelfth of August, 1879, was, within the meaning of Section 52 of the school law, an adoption as of that date of Harper’s geographies as the text books to be used in the schools on that subject; that there could be no change in such text books within three years after that date, without the consent of three-fourths of the members of the board given at a regular meeting thereof. By the action of the board on the twelfth of August, Cornell’s geographies are to be gradually excluded, and Harper’s geographies to be gradually introduced into the schools, so that no pupil will be required to-purchase a new book who already has the old. That Harper’s geographies *135 were adopted in connection with the proposition of Ii. W. Derby & Co., dated August 12, 1879, the terms of which, as to prices, are to be considered as conditions upon which they were adopted. That the action of a mere majority of the board, on the twenty-fourth of August, 1879, did not rescind or otherwise affect the action of the board on the twelfth of August, 1879, and the determination of the last-named date is still in full force. It was the duty of the board to carry into effect its determination of August 12, 1879, and this duty may be enforced by proceedings in mandamus on the application of the relator.
It may be that under the state of facts in this case, any taxpayer might bring an action in mandamus to compel the board of education of these schools to permit his child or children to use the books adopted May 7, 1906; but because they have that remedy, it does not follow that the remedy of injunction is not a legal one in this case.
The case in 35 O. S., 143, was a school house lease case. While the damages in that case would perhaps be very small to each tax-payer, yet the court very forcibly says that the board could be enjoined from leasing that school house, because it was an illegal act on the part of the board. While the damage was not being considered as the gist of the action, it was the illegal act of the board that was being considered. While it is usually thought that one of the elements entitling a private party to injunction is the fact of damage that would likely occur to him, yet the illegal act of a public officer, who holds property in trust, who deals with the money of the public in a trust capacity, certainly calls for some other remedy aside from an action for damages.
In 13 C. C., 255, is a case where a board of education undertook to remove a school house. The evidence showed to the court that there was no good reason for removing the school house. The syllabus reads thus:
“While a township board of education has exclusive control within its jurisdiction, in the selecting of a school house site and of. the size and character of the building to be erected thereon, yet where such board, without any valid reason or necessity therefor, is about to expend the public funds in taking down *136 a suitable and satisfactory school building on a central and improved lot, and re-erect it at another place in the district, a court of equity may properly enjoin the same, as an abuse of discretion and authority.”
There is a case where the act was not unlawful, but the court named it an abuse of discretion, and says that injunction is the proper remedy.
In the same volume, page 207, is a case decided by the circuit court of this district, and a case which binds this court, and which I must follow whether I think it to be the law or not.. This was an action in a controversy concerning the employment of a superintendent of schools, and there was an injunction made perpetual by the common pleas court. The case was taken 'to the circuit court of this circuit. One section of the syllabus is:
“A tax-payer may institute an action to restrain the school board from doing an illegal act. Neither Sections 1277-8, R. S., nor Sections 1777-8, R. S., apply to such actions against boards of education,”
'If I did not otherwise think that injunction was the proper remedy, under the holding in that case my hands would be tied, because I am bound to follow the decisions of this circuit so long as they remain in force. I have not made any examination to know whether that case has ever been overruled or not, because outside of that I think that the action attempting to introduce the boobs of Ginn & Co. is illegal, and I otherwise think, outside of that case, that injunction is the proper method to reach it.
I, therefore, find the equities of the case in favor of the plaintiff, and decree that the defendants ,be enjoined from introducing the books in question instead of the books of the American Book Company, under authority of their resolutions or actions of August 6, or of September 3, 1906, until such substitution may be made at a regular meeting of said board by a three-fourths majority, as is required by law. Judgment will be against the defendants for the costs of the case. The1 decree may be drawn up according to this opinion.